**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **MANCHESTER OAKS** ) | Case No. 11-10179-BFK |
| **HOMEOWNERS** ) | Chapter 11 |
| **ASSOCIATION, INC.** ) | |
| ) | |
| **Debtor** ) | |

**MEMORANDUM OPINION**

This case brings to mind the adage "good fences make good neighbors."[1] Unfortunately, the Court cannot build a wall for these neighbors. The Court, therefore, is left with the task of determining which, if any, of the claimants have allowable claims, and which do not.

The matter comes before the Court on the Objections of Creditors Patrick K. Batt, Rudolph J. Grom, and James R. Martin, Jr. (the "Objecting Parties") to the Proofs of Claim of Hector Daniel Rodriguez (Claim No. 10), Donna M. Milton (Claim No. 15), Aradom Iyob (Claim No. 17), Alice Wong (Claim No. 18), Lynn Jason Trust (Claim No. 19), Ron Buzon (Claim No. 20), Tesfai Berhe (Claim No. 21), Jonathan L. Hacker (Claim No. 24), Mansour M. Negash (Claim No. 25), Richard J. Kacik (Claim No. 29), Jessica Thrasher-Wilson (Claim No. 30), and Gregory Nowakowski (Claim No. 31). For reasons that will become apparent, the Court will refer to the Kacik, Thrasher-Wilson, and Nowakowski claims as the "Garage Owners' Claims." The remainder of the claims will be referred to as the "Non-Garage Owners' Claims."

---

[1] Robert Frost, "*Mending Wall*" (1914). Yet, Frost cautioned: "Before I built a wall I'd ask to know / What I was walling in or walling out,/And to whom I was like to give offence." *Id.*

1

Further, for the reasons stated below: (a) the Court will sustain the Objections to the Garage Owners' Claims; and (b) will overrule the Objections to the Non-Garage Owners' Claims.[2]

**Findings of Fact**

In September 1989, the developer of the Manchester Lakes subdivision recorded a Declaration of Covenants, Conditions and Restrictions for Neighborhood Five, now known as the Manchester Oaks subdivision. Movant's Exh. A-I. The Declaration established a Homeowners' Association (the "Association," or the "HOA"), and in the Section setting out the HOA's powers, provided, in part, that the HOA could:

> . . . make and enforce rules and regulations governing the use of parking areas within the Common Area, specifically including the right to designate a maximum of two parking spaces within the Common Area for the exclusive use of the Owner of each Lot; provided, however, that nothing herein shall require the Association to make any such designations or to ensure that the parking spaces are available for the use of any particular owner of a Lot, nor shall the Association be required to supervise or administer the use of the parking lots located within the Common Areas.

Objecting Parties' Exh. A-I, Sec. 2.3.18.

In October 1997, the Association adopted a policy with respect to parking. Objecting Parties' Exh. A-N. The Parking Policy made formal the previous, informal policy, instituted by the developer, which allocated two spaces to the townhomes that did not have garages, and no spaces to the townhomes that had garages and driveways. This was a common sense solution to the problem of limited parking in a community of townhomes, since the garage owners had space to park their cars in their garages and driveways. The Association issued a set of Rules and Regulations, under which homeowners were enjoined to avoid: "[p]arking in a reserved space

---

[2] Ms. Milton did not appear at the scheduled evidentiary hearing on her claim. Further, she did not respond to the Objecting Parties' discovery requests respecting her claim. Accordingly, her claim will be disallowed. The Court entered a separate Order (Docket No. 340) disallowing her claim.

without the consent of the resident to whom the space is assigned." Objecting Parties' Exh. A-K, Sec. 3-7, ¶ L.

Further, to give effect to the Parking Policy, the Association had the curbs painted in front of the non-garage townhomes with either the last two digits of the street address for the property or the Lot number. Nowakowski's Exh. 5, p. 2. The Association also put up signs, warning that offending vehicles would be towed.

Each of the Non-Garage Owners purchased their units in reliance, at least in part, on the Parking Policy. It was made apparent to each of them, by the HOA, that there were two allocated spaces for their homes. This was the result of the painting on the curbs, the language of the Rules and Regulations, quoted above, and the fact that there were signs posted, warning violators that their vehicles would be towed, should they park in the designated spaces. None of the Non-Garage Owners were given any reason to believe that the Parking Policy would, or could, change at any time in the future. All of the Non-Garage Owners testified adamantly that they would not have purchased their townhomes, had the homes not been allocated parking spaces, or had they been of the understanding that the policy could change at some time in the future. Sometime in 2009, the Association attempted to ratify the Parking Policy by adopting an Amendment to Declaration. Each of the Garage Owners voted in favor of the proposed Amendment. Objecting Parties' Exhs. B-R, B-S, & B-T.

All was not well with the other garage owners, however. In fact, incensed by the Parking Policy, three of the garage owners (Messrs. Batt, Grom and Martin) filed suit in the Circuit Court of Fairfax County to have the Parking Policy overturned. After seven days of trial, the Circuit Court: (a) ruled, for a variety of reasons, that the 2009 Amendment was ineffective and was never properly adopted by the required super-majority of the Manchester Oaks homeowners; (b)

3

overturned the Parking Policy, ruling that it was inconsistent with Section 2.3.18 of the Declaration, quoted above; (c) awarded Mr. Batt $27,355 in compensatory damages, Mr. Grom $27,355 in compensatory damages, and Mr. Martin $2,468 in compensatory damages; and (d) awarded Plaintiffs Batt and Grom $188,840.69 in attorney's fees and costs pursuant to Virginia Code § 55-515.  Objecting Parties' Exh. C-I.  The Association appealed to the Virginia Supreme Court.[3]  Unable to pay the awarded damages and attorney's fees, nor to obtain a supersedeas bond while the appeal was pending, the Association filed for Chapter 11 bankruptcy in this Court on January 10, 2011.[4]

During the course of the bankruptcy case, the following parties filed Proofs of Claim, to which Messrs. Batt, Grom, and Martin now object:[5]

| Claimant | Claim No. | Claim Amount |
|---|---|---|
| Hector Daniel Rodriguez | 10 | $69,000.00 |
| Donna M. Milton[6] | 15 | $68,000.00 |
| Aradom Iyob | 17 | $68,000.00 |
| Alice Wong | 18 | $68,000.00 |
| Lynn Jason Trust | 19 | $69,000.00 |
| Ron Buzon | 20 | $68,000.00 |
| Tesfai Berhe | 21 | $68,000.00 |
| Jonathan L. Hacker | 24 | $68,000.00 |

---

[3] Appeals to the Virginia Supreme Court in civil matters of this kind are discretionary, and not a matter of right.  The Association has filed a Petition for Appeal with the Supreme Court.  The Court has not yet decided whether or not to grant a writ of appeal in the case.

[4] The Final Judgment from the Circuit Court actually was entered on August 8, 2011, post-petition, after the Objecting Parties obtained relief from the automatic stay from this Court to liquidate, but not collect on, their claims.  Objecting Parties' Exh. C-I.

[5] Batt, Grom, and Martin have filed their own Proofs of Claim (Nos. 3, 4, and 5), and have standing to object pursuant to 11 U.S.C. § 1109(b).

[6] Previously disallowed.  *See supra* n.2.

| **Claimant** | **Claim No.** | **Claim Amount** |
|---|---|---|
| Mansour M. Negash | 25 | $68,000.00 |
| Richard J. Kacik | 29 | $120,654.15 |
| Jessica Thrasher-Wilson | 30 | $75,000.00 |
| Gregory Nowakowski | 31 | $62,355.00 |

The Court heard evidence with respect to each of the Claims. The matter is now ripe for a decision.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 1334, and the Order of Reference from the U.S. District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## Conclusions of Law

In a bankruptcy case, a proof of claim is "deemed allowed," unless a party in interest objects. 11 U.S.C. § 502(a). Further, a proof of claim executed and filed in accordance with the Bankruptcy Rules "constitute[s] prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). When a claim is objected to, the initial burden is on the objecting party. If the objecting party meets its burden in objecting to the validity or the amount of the claim, then the burden shifts to the claimant. *In re Haymarket Transp., Inc.*, Case No. 09-20389-SSM, 2011 Bankr. LEXIS 1814 (Bankr. E.D. Va. May 13, 2011); *In re Falwell*, 434 B.R. 779, 784 (Bankr. W.D. Va. 2009); *In re Williams-Johnson*, Case No. 00-61211-DOT, 2006 Bankr. LEXIS 304, at *305 (Bankr. E.D. Va. Jan. 4, 2006). The Court will address the claims of the Garage Owners, and the Non-Garage Owners, in turn.

### I. The Garage Owners' Claims.

The Garage Owner Claimants are Mr. Kacik, Ms. Thrasher-Wilson, and Mr. Nowakowski. Mr. Kacik and Ms. Thrasher-Wilson were represented by counsel. Mr. Nowakowski represented himself, *pro se*. Interestingly, the Garage Owners' claims are, in substance, no different from the claims of the objecting creditors. Messrs. Batt, Grom, and Martin are also garage owners. As Plaintiffs in the Circuit Court of Fairfax County, Messrs. Batt, Grom, and Martin maintained not only that the Parking Policy was illegal, but that they were monetarily damaged by the existence and enforcement of the Parking Policy, as they were for years deprived of the use of Common Area spaces to which they would have had access, but for the Parking Policy. At the end of the day, the Circuit Court awarded Mr. Batt and Mr. Grom $27,355 each in compensatory damages, this consisting of $25,000 in the diminution in value of their properties, plus $2,355 in HOA dues paid that were attributable to the Common Area for the relevant time period, and their attorney's fees and costs. Objecting Parties' Exh. CG, pp. 29-45. The $25,000 was established as a party admission, based on the HOA's web site, which stated: "[i]f the non-garage units were ever to lose their reserved parking spaces, this would cause a significant devaluation of their property. Some estimates are as high as $50,000 - $70,000." Debtor's Exh. O, p. 2. Mr. Martin, who purchased his home in December 2006, was awarded $1,762.50 in compensatory damages. Objecting Parties' Exh. CG, p. 41. In calculating Mr. Martin's damages, the Fairfax County Circuit Court found the use of the parking spaces to be worth an estimated $37.50 per month, and multiplied that figure by 47 months (the length of time Mr. Martin was prohibited from using the communal parking spaces). *Id.* at 40-41.

Here, the Garage Owners each claim two elements of damages: (a) $27,355, this being the same amount awarded to Mr. Batt and Mr. Grom in the Circuit Court; and (b) $35,000, this

6

being an estimate of the damage to their property as a result of the implementation of the Parking Policy. The Objecting Parties object to these claims on three grounds: (1) the claims are barred by the applicable Virginia statute of limitations; (2) the claimants are estopped from maintaining their claims; and (3) the claimants' damages are speculative and unproven.[7] The Court will address each of these arguments, in turn.

    1. *The Statute of Limitations.*

The Objecting Parties argue that, at best, the applicable statute of limitations is five years under Virginia Code § 8.01-243(B) (damage to property). Each of the claimants purchased his or her unit many years ago – Mr. Nowakowski in 1990, Ms. Thrasher-Wilson in 1995, and Mr. Kacik in 1995. The Objecting Parties assert that there is no "discovery rule" in Virginia for these kinds of claims, which is accurate. However, these claimants were deprived of the use of the Common Area parking spaces from the time that they bought their units though the Circuit Court's entry of the Final Judgment on August 8, 2011. They would have suffered a continuing harm (if any), from the denial of this use. In the case of *Virginia Hot Springs Co. v. McCray,* 106 Va. 461, 56 S.E. 216 (1907), a nuisance case resulting in injury to property, the Virginia Supreme Court made a distinction between cases where the structure causing the harm is permanent and cases where an impermanent nuisance results in damage to property. In the latter case, where the injury is continuing, the general rule is that an action may be brought as long as the harm continues. *See Virginia Hot Springs Co. v. McCray*, 106 Va. at 463, 56 S.E. at 217 ("The question presented is whether the case falls under the control of the general rule that in an action for a nuisance repeated actions may be brought as long as the nuisance continues, or under the exception to that general rule, which is, that for injuries of the character complained of in the

---

[7] During the course of the hearing, the Objecting Parties withdrew their objections to the claims based on laches.

declaration the cause of action accrues at once and the whole damage is recoverable in one action.") Further, "[i]n all cases of doubt respecting the permanency of the injury the courts are inclined to favor the right to bring successive actions." *Norfolk & W. R. Co. v. Allen,* 118 Va. 428, 438, 87 S.E. 558, 561 (1915) (quoting Sutherland on Damages (3d Ed.), vol. IV, sec. 1039, p. 3034).

Notably, the Objecting Parties themselves claimed in the Circuit Court that the Parking Policy "continue[d] to cause" them substantial harm, and that the "ongoing threat of enforcement" similarly caused them harm. Amended Complaint, Objecting Parties' Exh. A-G, ¶¶ 72-74. Further, the Objecting Parties argued in this Court that the Parking Policy could have been changed at any time (and hence, the Objecting Parties asserted, the Non-Garage Owners had no right to rely on the existence of the Parking Policy when they purchased their units).

The Non-Garage Owners fall under the general rule of continuing injury, and have claims going back five years from the filing of the bankruptcy case (which then tolls the further running of the statue, under 11 U.S.C. § 108(c)), through the date of the Final Judgment, August 8, 2011. The Court finds that these claims are not barred by the statute of limitations.

   2. *Estoppel.*

The Objecting parties claim that the Garage Owners are estopped, by virtue of the fact that each of them voted in favor of the 2009 Amendment by Proxies, which would have had the effect of ratifying the Parking Policy and vitiating the claims of the Garage Owners (including Messrs. Batt, Grom, and Martin). Objecting Parties' Exhs. B-R, B-S, & B-T. However, according to the Circuit Court, the 2009 Amendment was never properly implemented, and was never effective. Objecting Parties' Exh. C-G, pp. 10-18. It is difficult to see how the Garage Owners are estopped by virtue of voting for something that never went into effect (and is not

now relied upon by the Non-Garage Owners). The defense of estoppel, based on the Proxies, is inapplicable here.

    *3. Damages.*

As noted, the Garage Owners' claims consist of two elements of damages: (a) $27,355, this being the same amount awarded to Mr. Batt and Mr. Grom in the Circuit Court; and (b) $35,000, this being an estimate of the damage to their property as a result of the implementation of the Parking Policy. With respect to the $27,355, this is just a repetition of what Messrs. Batt and Grom were awarded in the Circuit Court. No evidence was submitted to this Court in support of these damages, other than the HOA's web site statement, as quoted above, despite the Court having cautioned all of the parties at the hearing on October 4, 2011, that each party would be responsible for proving his or her own damages.[8]

The damages awarded in the Circuit Court in favor of Messrs. Batt and Grom are not entitled to collateral estoppel effect for these claimants, for the simple reason that the parties aren't the same. While the Court is obligated to give a State Court judgment the same effect that it would receive in the rendering State, 28 U.S.C. § 1738, in Virginia, the parties must be the same in order to obtain collateral estoppel. *Rawlings v. Lopez*, 267 Va. 4, 591 S.E.2d 691 (2004); *Norfolk & W. R. Co. v. Bailey Lumber Co.,* 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980) (quoting *Bates v. Devers,* 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974)). Commonly referred to as the mutuality rule, "'a litigant is generally prevented from invoking the preclusive force of a judgment unless he would have been bound had the prior litigation of the issue reached the opposite result.'" *Rawlings v. Lopez*, 267 Va. at 5, 591 S.E.2d at 692 (quoting *Bates v.*

---

[8] The Garage Owners did not attempt to estimate their damages by estimating a portion of their homeowners' dues payable on account of the Common Area on a monthly basis, as the Fairfax County Circuit Court did in calculating Mr. Martin's Damages, and in calculating a portion of Mr. Batt and Mr. Grom's damages. *See supra* p. 6.

*Devers,* 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974)). Had the Objecting Parties not been awarded any damages by the Circuit Court, they could not now claim that the Garage Owners are not entitled to any damages, for the same reason – the Garage Owners were not parties to the Circuit Court action.[9] Here, the parties are not the same. For this reason, the Garage Owners cannot rely on the damages awarded to the Objecting Parties in the State Court action.

Moreover, the Court finds the statement on the web site to be wholly unreliable as evidence of the Garage Owners' damages. First, the statement is only an estimate – "some estimates are as high as $50,000 - $70,000." Debtor's Exh. O, p. 2. Second, in referring to a devaluation of "their" property, the statement is referring to the Non-Garage Owners, not the Garage Owners. Third, and most importantly, it is based entirely on hearsay. Although the State Court found this to be an admission of the HOA, the statement itself ("some estimates") is based on inadmissible hearsay because the estimates are not in evidence in this Court. The Court will disallow the Garage Owners' claims with respect to the claimed $27,355.

With respect to the claim of $35,000 for each Garage Owner, two of the claimants, Messrs. Kacik and Nowakowski, relied on the Quigley Report (discussed below), to support their claim of $35,000 each. Ms. Thrasher-Wilson said that she was not familiar with the Quigley Report, but she had no other basis for the assertion of her $35,000 of damages, other than reference to the Fairfax County tax assessment for her home. Messrs. Kacik and Nowakowski also made reference to the Fairfax County tax records. However, the Quigley Report was submitted in support of the Non-Garage Owners' claims, not the Garage Owners' claims, which are fundamentally different. The Garage Owners can't claim the loss of value by virtue of the

---

[9] The opposite result obtains with respect to the validity of the Parking Policy, and with respect to the invalidity of the proposed 2009 Amendment. The Association was a party to the Fairfax County litigation, and it is bound by the result.

loss of any parking spaces, as they never had any assigned parking spaces. Rather, the basis for the Garage Owners' claims is that the Parking Policy deprived them of the use of the Common Area spaces, for years. This is a very different thing from the Non-Garage Owners' claims, and the Quigley Report is not helpful in any way to establish the monetary amount of the Garage Owners' losses.

As well, the Fairfax County tax assessments for these properties are of no value for the Garage Owners' claims – the tax assessor does not purport to ascribe a value to the loss of use of parking spaces in this neighborhood. While parties are always permitted to testify as to the value of their own properties, *see infra* p. 15, the Garage Owners weren't testifying as to the value of their properties; they were testifying as to the value of the loss of the *use* for a number of years of the Common Area parking spaces. In any event, the only support asserted for these claims were the Quigley Report and the tax assessments, which, as noted, are not helpful to the Court on the issue of the Non-Garage Owners' damages.

For the foregoing reasons, the claims of the Garage Owners will be disallowed.[10] The Court is aware of the irony of disallowing the claims of the Garage Owners, which are the same in substance to the claims of the Objecting Parties, who were themselves Garage Owners. The difference is that the Objecting Parties proved their damages in State Court; the Garage Owners here, did not.

## II.     The Non-Garage Owners' Claims.

The claims of the Non-Garage Owners are, in essence, the converse of the claims of the Garage Owners. Whereas the Garage Owners claim that they were deprived of the use of the

---

[10] During the course of his argument, Mr. Nowakowski claimed that his Proof of Claim was based on fraud, i.e., the Association's alleged fraud in maintaining an improper parking policy, knowing that it was wrong. However, Mr. Nowakowski conceded that, as a garage owner, he never relied on the Parking Policy to his detriment.

spaces in the Common Area for so many years, the Non-Garage Owners had the exclusive use of the same spaces for that same period of time.  The Non-Garage Owners' claim is that they were induced to purchase their units in reliance on the Parking Policy, under which they would have exclusive use of their spaces, exclusive use that they lost when the Circuit Court ruled against the Association.  The Objecting Parties assert: (1) these claims are not well grounded in law, here, the law of equitable estoppel, because there were no intentional misrepresentations made to them by the Association; and (2) in any event, they have not proven their damages.  Both of these arguments are addressed below.

      *1. Equitable Estoppel vs. Constructive Fraud.*

The Objecting Parties assert that the Non-Garage Owners' claims are not allowable because the claims are grounded in equitable estoppel, and there were no intentional misrepresentations made to the Non-Garage Owners.  The Objecting Parties correctly assert that, in order to maintain a claim (or as we will see, more accurately, a defense) of equitable estoppel, the party asserting equitable estoppel must prove by "clear, precise and unequivocal evidence" that: "(1) [a] material fact was falsely represented or concealed; (2) [t]he representation or concealment was made with knowledge of the facts; (3) [t]he party to whom the misrepresentation was made was ignorant of the truth of the matter; (4) [t]he representation was made with the intention that the other party should act upon it; (5) [t]he other party was induced to act upon it; and (6) [t]he party claiming estoppel was misled to his [or her] injury." *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.,* 221 Va. 81, 86, 266 S.E.2d 887, 890 (1980) (citing *Coleman v. Nationwide Life Ins. Co*., 211 Va. 579, 582-83, 179 S.E.2d 466, 469 (1971); *Trayer v. Bristol Parking*, 198 Va. 595, 604-605, 95 S.E.2d 224, 231 (1956)).  Here, the Objecting Parties assert that the Association did not knowingly make any misrepresentations

to the Non-Garage Owners – indeed, the Association for the longest time believed the Parking Policy to be consistent with the Declaration of Covenants.  However, the Objecting Parties' reliance on equitable estoppel cases is misplaced.  Equitable estoppel under Virginia law is usually employed defensively, not as a separate cause of action.  It may, for example be asserted in response to a claim of the statute of limitations.  But, it does not itself constitute a cause of action.  *See Meriweather Mowing Serv. v. St. Anne's Belfield, Inc.,* 51 Va. Cir. 517 (Va. Cir. Ct. 2000) ("[E]quitable estoppel usually operates as a shield, as opposed to a sword, 'and it does not of itself crate a new right or give a cause of action; rather it serves to prevent losses otherwise inescapable and to preserve rights already acquired'" (quoting *Bohannon v. Riverton Investment Corp.,* 1993 WL 945938, at *4 (Va. Cir. Ct. Feb. 1, 1993))).

Rather, the better way to view the claims of the Non-Garage Owners is through the prism of constructive fraud.  "To prevail on a constructive fraud claim, a [claimant] must show by clear and convincing evidence that the other party negligently or innocently made a false representation of material fact, and that the [claimant] suffered damage as a result of his [or her] reliance upon that misrepresentation." *Supervalu, Inc. v. Johnson*, 276 Va. 356, 367, 666 S.E.2d 335, 341-42 (2008) (citing *Prospect Dev. Co. v. Bershader,* 258 Va. 75, 86, 515 S.E.2d 291, 297 (1999); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998); *Blair Constr. v. Weatherford*, 253 Va. 343, 346, 485 S.E.2d 137, 138 (1997)).  The statement must be one of existing fact, or of a present intent not to perform; a promise of future action will not support a claim of constructive fraud.  *Supervalu, Inc. v. Johnson*, 276 Va. at 368, 666 S.E.2d at 342.

Here, the Objecting Parties would assert that the Association's representations as to the use of parking spaces were not statements of existing fact – that they were statements that the

Non-Garage Owners would have the use of their spaces in the future.  However, the Association's representations - consisting of the Rules and Regulations, the painting of the curbs, and the signs threatening that violators would be towed – all gave the Non-Garage Owners the present impression that there was a Parking Policy in place at the time and that the Parking Policy consisted of two assigned spaces for Non-Garage Owners.  This is not a statement about the future, but a statement of the present existence of an enforceable Parking Policy.  The *Prospect Development v. Bershader* case is instructive.  258 Va. 75, 515 S.E.2d 291 (1999).  There, the Plaintiffs were told that Outlot B could not perk, and that it could "never be developed."  *Id.* at 86, 515 S.E.2d at 295.  The Bershaders relied on these statements in purchasing their home, with the understanding that the adjoining lot would remain undeveloped in the future.  *Id.*  The Supreme Court of Virginia found that the statements of the developer were of then-existing fact, which gave rise to a claim of constructive fraud.  *Id.* at 86, 515 S.E.2d at 297.  Here, too, the Non-Garage Owners purchased their units with the understanding that there was a Parking Policy, and that they had two assigned spaces, both of which were statements of existing fact.[11]

All of the Non-Garage Owners testified that, when they purchased their units, they relied upon the appearance of a Parking Policy that granted them exclusive access to their spaces.  All of them testified that they would not have purchased their units in the absence of assigned

---

[11] The Objecting Parties further assert that the Non-Garage Owners were never told that the Parking Policy could never be changed, in the future, by the Board.  True enough, but they also were never told that the Parking Policy could change, and by all appearances, the neighborhood was an established neighborhood and the parking arrangements did not appear to be susceptible to change.  More importantly, the Board did not, in fact, change the Policy.  The 2009 Amendment failed, and the Policy was ruled to be a violation of the Declaration of Covenants by the Circuit Court.  It is, therefore, something of a red herring to say that the Non-Garage Owners were never told that the Board could not change the Policy – the Board did not, in fact, change the Policy.

parking spaces, some quite convincingly and emotionally.  Each of the Non-Garage Owners established his or her reliance on the appearance of two assigned parking spaces.

    *2. Damages.*

Property owners are entitled to testify as to the value of their properties.  *Gray v. Bank of Am., N.A. (In re Gray)*, 2010 Bankr. LEXIS 181, at *12-13 (Bankr. E.D. Va. Jan. 15, 2010) (holding that, under Fed.R.Evid. 701, "[i]t is well accepted that owners may testify as to the value of their property.")  *See also Snyder Plaza Props., Inc. v. Adams Outdoor Adver., Inc.*, 259 Va. 635, 644 (2000) (holding that "an owner of property is competent and qualified to render a lay opinion regarding the value of that property" (quoting *Haynes v. Glenn*, 197 Va. 746, 750 (1956))).  Each of the Non-Garage Owners testified that his or her property was devalued by roughly $70,000 as a result of the loss of the two spaces.  All of them testified that this was an approximately ten percent (10%) diminution in value, per parking space. Mr. Berhe testified that this was his "best estimate" of his damages.  Mr. Iyob referenced the number of square feet of his home, versus the number of square feet of the parking spaces.  Ms. Trust testified, convincingly, that her estimate of damages was based on "common sense," and "quality of life."  Mr. Wong testified that he believed that he paid a premium for his townhome, based on the allocated parking spaces.  A number of the homeowners testified to the great inconvenience of now having to search for a space in the visitors' parking, or, failing that, having to park out on the street and carry their groceries (not to mention their children) from the street to their homes.  The loss of value, as a result of the loss of the parking spaces to these homeowners, has been demonstrated to the Court's satisfaction.

Many of the Non-Garage Owners relied on the report of Dianne Quigley, who testified as an expert real estate appraiser in favor of the homeowners.  Ms. Quigley testified that, all

other things being equal, we should expect to see a ten percent (10%) difference in value between a townhome that had one parking space, versus the same townhome that has no assigned parking space. Ms. Quigley did not testify as to the difference between townhomes that have two parking spaces versus townhomes that have no parking spaces, so there is no real evidence of a direct correlation between her testimony and that of the homeowners' estimates of their damages. However, the Court accepts the homeowners' testimony as to the diminution in value to their properties, and views the Quigley Report as something of a backup, a professional assessment of the reality of the losses suffered.

The Objecting Parties presented the testimony of Mr. Howe as a rebuttal expert. The Court found Mr. Howe's testimony to be generally convincing and straightforward. However, Mr. Howe's testimony was limited to attacking Ms. Quigley's methodologies in reaching her conclusions. At the end of the day, Mr. Howe never testified that he disagreed with Ms. Quigley's conclusion, i.e., that it was inaccurate to say that a townhome with one assigned parking space is worth more than a townhome without an assigned parking space, all other things being equal. That is, while he disagreed with Ms. Quigley's methodology, and made a number of good points attacking Ms. Quigley's Report, he never disagreed with the ultimate (and common sense) conclusion that a townhome is worth more with an assigned parking space, than without.

Accordingly, the Court finds that the Non-Garage Owners have proven their damages to the Court's satisfaction.

**Conclusion**

For the foregoing reasons, the Court will: (a) disallow the Garage Owners' claims; and (b) allow the Non-Garage Owners' claims, in the amounts set forth in their proofs of claim. A separate Order shall issue.

Date: _____

                                                                Brian F. Kenney
                                                                United States Bankruptcy Judge

Copies to:

Thomas J. Stanton, Esquire
Stanton & Associates, P.C.
221 South Fayette Street
Alexandria, VA 22314
Counsel for the debtor

Hector Daniel Rodriquez
6889 Signature Circle
Alexandria, VA 22310-4377
Debtor Designee

Michael Tully Driscoll, Esquire
Office of the U.S. Trustee
115 South Union St., Suite 210
Alexandria, VA 22314

David Ludwig, Esquire
Dunlap, Grubb & Weaver, PLLC
199 Liberty Street, SW
Leesburg, VA 20175
Counsel for Creditors Patrick K. Batt, Rudolph J. Grom, and James R. Martin, Jr.

Bennett A. Brown, Esquire
3905 Railroad Ave., Suite 200n
Fairfax, VA 22030
Counsel for Creditors Rodriguez, Iyob, Wong, Trust, Buzon, Berhe, Hacker, Negash, Thrasher-Wilson, and Kacik

Hector Daniel Rodriguez
6889 Signature Circle
Alexandria, VA 22310
Creditor

Donna M. Milton
6877 Signature Circle
Alexandria, VA 22310
Creditor pro se

Aradom Iyob
6873 Signature Circle,
Alexandria, VA 22310
Creditor

Alice Wong
6871 Signature Circle,
Alexandria, VA 22310
Creditor

Lynn Jason Trust
6869 Signature Circle,
Alexandria, VA 22310
Creditor

Ron Buzon
6856 Signature Circle,
Alexandria, VA 22310
Creditor

Berhe, Tesfai
6846 Signature Circle
Alexandria, VA 22310
Creditor pro se
Creditor

Jonathan L. Hacker
6815 Signature Circle,
Alexandria, VA 22310
Creditor

Mansour M. Negash
6813 Signature Circle,
Alexandria, VA 22310
Creditor

Richard J. Kacik
6853 Signature Circle,
Alexandria, VA 22310
Creditor

Jessica Thrasher-Wilson
6839 Signature Circle
Alexandria, VA 22310
Creditor

Gregory Nowakowski
6802 Signature Circle
Alexandria, VA 22310
Creditor pro se