UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
MANCHESTER OAKS HOMEOWNERS                       )
ASSOCIATION, INC.                                )          Case No. 11-10179-BFK
                                                )          Chapter 11
                              Debtor             )

**MEMORANDUM OPINION**

This matter came before the Court on January 28, 2014, for confirmation of the Debtor's Amended/Modified Plan of Reorganization. Docket No. 452. Objections to confirmation of the Plan were filed by Patrick K. Batt, Rudolph J. Grom and James R. Martin (Docket No. 457) (the "Batt, Grom and Martin Objection"), Daniel Rodriguez (Docket No. 444), Gregory Nowakowski (Docket No. 456), and Huynh Hue Thi (Docket No. 459). Mr. Grom filed two additional Objections (Docket Nos. 460 and 468) (the "Grom Supplemental Objections"), in his capacity as a homeowner (as opposed to, as a creditor).[1]

The Court will deny confirmation of the Debtor's Plan. First, the Plan does not have the affirmative vote of one class of impaired creditors under Section 1129(a)(10), because the one accepting class, that of a single creditor, is separately classified improperly from the dissenting classes of claims. Second, the Plan is not feasible under Section 1129(a)(11) because the foundation of the Plan, the Debtor's special assessment, was not authorized in accordance with the Debtor's Declaration of Covenants, Conditions and Restrictions. Finally, the Plan has not been proposed "in good faith and not by any means forbidden by law" under Bankruptcy Code

---

[1]  Mr. Rodriguez filed his Objection before the Court approved the Debtor's Disclosure Statement. In approving the Disclosure Statement, the Court ruled that it would treat Mr. Rodriguez's Objection as an objection to confirmation of the Debtor's Plan, and that Mr. Rodriguez need not re-file his Objection.

Section 1129(a)(3), because it does not comply with applicable State law concerning homeowner association special assessments.

## Findings of Fact

Having heard the evidence, the Court makes the following findings of fact:

A.   *The Batt, Grom and Martin Litigation in State Court.*

1.      The Debtor is a Virginia non-stock, not for profit corporation. It is the community association for the subdivision known as Manchester Oaks, in Fairfax County, Virginia. The Debtor's Declaration of Covenants, Conditions and Restrictions (the "Declaration") is dated September 29, 1989.[2] Manchester Oaks is a community of 57 townhomes. Thirty of the townhomes have garages and driveways; twenty-seven do not. There are 72 parking spaces within the community's common area.[3]

2.      Messrs. Batt, Grom and Martin are owners of townhomes with garages within the Manchester Oaks subdivision. Prior to the filing of this case, Messrs. Batt, Grom and Martin filed a Complaint against the Debtor in the Circuit Court of Fairfax County. The lawsuit arose out of the Debtor's adoption of a parking policy for parking spaces in the Debtor's common area. They asserted: (a) that the parking policy was never properly adopted by the Debtor's Board; and (b) that the parking policy, which allocated two spaces to non-garage owners, and one space to garage owners (on the theory that the garage owners had additional spaces in their driveways to park) was violative of Section 2.3.18 of the Declaration, which allows the Debtor's Board "to designate a maximum of two parking spaces within the Common Area for the exclusive use of

---

[2]  The Declaration originally was filed using the name Neighborhood Five at Manchester Lakes Subdivision. For purposes of this Opinion, the terms "Debtor" and "Association" are used interchangeably.

[3]  These numbers are adopted from the Virginia Supreme Court's opinion in *Manchester Oaks Homeowners Ass'n, Inc. v. Batt,* 284 Va. 409, 732 S.E.2d 690 (2012), discussed below.

the Owner of Each Lot." They also sought an award of attorney's fees and costs pursuant to

Virginia Code § 55-515(A).

3.    In August 2011, the Circuit Court struck down the parking policy as not properly

authorized, and as violative of Section 2.3.18 of the Declaration. The Circuit Court also awarded:

(a) Mr. Batt $27,355 in compensatory damages, Mr. Grom $27,355 in compensatory damages,

and Mr. Martin $2,468 in compensatory damages; and (b) Messrs. Batt and Grom $188,840.69 in

attorney's fees and costs pursuant to Virginia Code § 55-515(A). The Final Judgment states that

each of these amounts will bear "post-judgment interest at the statutory rate." Amended Proof of

Claim 3-4.[4]

4.    The Debtor appealed the judgment to the Virginia Supreme Court. On September

14, 2012, the Virginia Supreme Court issued its decision. The Court: (a) reversed the award of

damages to Messrs. Batt, Grom and Martin; (b) entered final judgment in their favor, in the

amounts of $2,355 to Batt, $2,355 to Grom, and $705 to Martin; (c) affirmed the award of

attorney's fees and costs in the amount of $188,840.69; and (d) remanded the case to the Circuit

Court for an award of additional reasonable fees and costs incurred by Batt, Grom and Martin on

appeal. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt,* 284 Va. 409, 430-31, 732 S.E.2d 690,

703 (2012).

5.    The Circuit Court awarded an additional $29,048.01 in fees and costs, and entered

a final judgment for the amounts awarded on appeal and the additional fees and costs. Amended

Proof of Claim 3-4.

---

[4]  The Final Judgment from the Circuit Court was entered after the Debtor filed this bankruptcy case. Messrs. Batt, Grom and Martin obtained relief from the automatic stay from this Court to liquidate, but not to collect on, their claims.

B.  *The Claims Process in this Court.*

6.    On January 10, 2011, the Debtor filed a petition under Chapter 11 with this Court.

7.    Messrs. Batt, Grom and Martin timely filed a proof of claim for the amounts awarded to them in the Circuit Court Judgment (at the time, the case had not yet been resolved on appeal to the Virginia Supreme Court).

i.    *The Garage Owners' and Non-Garage Owners' Claims.*

8.    In addition to the Batt, Grom and Martin claims, a number of homeowners, non-garage owners and garage owners alike, filed proofs of claim, identified as follows:

| Claimant | Claim No. | Claim Amount |
|----------|-----------|--------------|
| Hector Daniel Rodriguez* | 10 | $69,000.00 |
| Donna M. Milton* | 15 | $68,000.00 |
| Aradom Iyob* | 17 | $68,000.00 |
| Alice Wong* | 18 | $68,000.00 |
| Lynn Jason Trust* | 19 | $69,000.00 |
| Ron Buzon* | 20 | $68,000.00 |
| Tesfai Berhe* | 21 | $68,000.00 |
| Jonathan L. Hacker* | 24 | $68,000.00 |
| Mansour M. Negash* | 25 | $68,000.00 |
| Richard J. Kacik** | 29 | $120,654.15 |
| Jessica Thrasher-Wilson** | 30 | $75,000.00 |
| Gregory Nowakowski** | 31 | $62,355.00 |

* Non-Garage Owners

** Garage Owners

4

9.      Messrs. Batt, Grom and Martin filed Objections to all of the above claims. The Court disallowed Ms. Milton's claim because she did not respond to the Objections to her claim. Docket No. 340.

10.      After an evidentiary hearing, this Court: (a) disallowed the garage owners' claims, owing to a failure of proof as to the damages that they claimed to have suffered as a result of the implementation of the parking policy; and (b) allowed the non-garage owners' claims, on a theory of constructive fraud. *In re Manchester Oaks Homeowners Ass'n, Inc.,* 469 B.R. 631, 641-42 (Bankr. E.D. Va. 2012).

11.      Messrs. Batt, Grom and Martin appealed the allowance of the non-garage owners' claims. The garage owners did not appeal the disallowance of their claims. The District Court reversed, holding that the non-garage owners' claims should be disallowed. *Batt v. Manchester Oaks Homeowners Ass'n, Inc.,* 2013 WL 1155519, at *5 (E.D. Va. 2013).

12.      As a result, other than the Whiteford Taylor & Preston ("WTP") claim discussed below, the claims of Messrs. Batt, Grom and Martin are the only significant claims in the case. There are also administrative expenses of the Debtor's law firm, which have not been paid.

> ii.      *The Whiteford Taylor & Preston Claim.*

13.      On February 8, 2011, the Debtor filed an Application to Employ the Whiteford Taylor & Preston law firm as special counsel to represent the Debtor in the Fairfax litigation, and any appeals thereof. Docket No. 40. This Application was approved by the Court on March 1, 2011. Docket No. 53.

14.      Whiteford Taylor & Preston, LLP ("WTP"), represented the Debtor in the Fairfax litigation, and the appeal to the Virginia Supreme Court. WTP filed a proof of claim in this case in the amount of $81,262.40. Claim No. 6-1.

5

15.     On October 28, 2013, the Debtor filed a Disclosure Statement and Plan. Docket

Nos. 439, 440. The Plan called for the payment of 10% of the WTP claim, or $8,126.24, over a

period of 60 months. Docket No. 439, Sec. 2.05.

16.     WTP filed an Objection to the Disclosure Statement. Docket No. 446. At the

Disclosure Statement hearing, the Debtor advised the Court that it had settled with WTP. The

terms of the settlement called for the WTP claim to be allowed in the amount of 80% of the

claim. The Debtor would release any malpractice claims that it might have against WTP arising

out of the representation. No notice of approval of this settlement was filed or served under

Bankruptcy Rule 9019. Rather, the Court held at the Disclosure Statement hearing that the

settlement would be subject to confirmation of the Debtor's Plan. Tr., 11/12/2013, p. 14.

C. *The Structure of the Debtor's Proposed Plan.*

17.     The Court approved the Debtor's Disclosure Statement on November 13, 2013.

Docket No. 450. The Debtor filed an Amended/Modified Plan and Disclosure Statement on

December 24, 2013. Docket Nos. 452, 454.

18.     The structure of the Debtor's Amended/ Modified Plan is as follows:

- Class 1 - Administrative Expenses will be paid in full at confirmation, or on such

  terms as the administrative claimants may agree. This Class is unimpaired.

- Class 2 – the I.R.S., which is owed $98, will be paid in full on the Effective Date of

  the Plan. This Class is unimpaired.

- Class 3 - The compensatory portion of the Fairfax Judgment in favor of Messrs. Batt,

  Grom and Martin ($2,355 to Batt, $2,355 to Grom, and $705 to Martin) will be paid

  in full, with interest, in equal amounts over a 60 month period. This Class is impaired.

- Class 4 – The legal fees and costs awarded to Messrs. Batt, Grom and Martin (totaling $217,888.67) will be paid in full, without interest, over a 60 month period. This Class is impaired.[5]

- Class 5 – the unsecured claim of WTP will be paid 80% of the claim, over a 60 month period, without interest. This Class is impaired.

- Class 6 – the unsecured claim of Dominion Virginia Power in the amount of $257.33 will be paid in full on the Effective Date of the Plan. This Class is unimpaired.

- The members of the Debtor will retain their membership interests.[6]

19.     The Plan funding will come from a special assessment to be made by the Debtor. Plan, Art. VI.

20.     Class 5, the WTP claim, has accepted the Plan. Classes 3 and 4, the Batt, Grom and Martin claims, have rejected the Plan.

*D.  The Special Assessment by the Debtor's Board.*

21.     In October 2013, the Debtor's Board passed a special assessment, the purpose of which is to fund the amounts due under the Plan to the creditors (Batt, Grom, Martin and WTP), and to pay the administrative expenses of the bankruptcy case. Docket No. 464 (Debtor's Memorandum in Support of Special Assessment), Ex. A.

22.     The special assessment was not approved by a vote of the homeowners. It will require the homeowners to pay a total of $334,416.43, or $5,867 each, over the sixty month life

---

[5]  Messrs. Batt, Grom and Martin object to the Plan on the ground that this constitutes unfair discrimination, relative to the treatment of their Class 3 claims. It is hard for the Court to see how this is unfair discrimination, since as a matter of bankruptcy law, the Debtor isn't required to pay interest on the Class 3 unsecured claims at all. 11 U.S.C. § 502(b)(2).

[6]  Batt, Grom and Martin claim that this violates the absolute priority rule. 11 U.S.C. § 1129(b)(2)(B)(ii). Because the Court is sustaining objections to confirmation of the Plan on other grounds, the Court declines to make a ruling on this issue at this time.

of the Plan. Plan, Art. VI. This equates to a monthly increase in homeowners' dues in the amount of $97.78 for each homeowner in the community, for the duration of the Plan.

## Conclusions of Law

Confirmation of a Plan of Reorganization requires that the Debtor comply with all of the provisions of Section 1129 of the Bankruptcy Code. Where the Debtor has the affirmative votes in each impaired class, and otherwise meets all of the requirements of Section 1129(a), the plan can be confirmed consensually pursuant to Section 1129(a) of the Code. Where, as here, not all of the impaired classes have accepted the plan - which is to say, when the plan satisfies all of the requirements of Section 1129(a) of the Code, except for that of 1129(a)(8) - then the Court looks to the cramdown factors contained in Section 1129(b) of the Code. Section 1129(b) requires that the plan not discriminate unfairly, and that the plan be "fair and equitable," with respect to each impaired, non-accepting class of claims. The Debtor, as plan proponent, bears the burden of proof with respect to all elements of confirmation of its Plan. *In re Mullins,* 435 B.R. 352, 357 (Bankr. W.D. Va. 2010); *In re Simon,* 2008 WL 2953471, at *fn. 12 (Bankr. E.D. Va. 2008); *In re Byrd Foods, Inc.,* 253 B.R. 196, 199 (Bankr. E.D. Va. 2000).

A number of parties have filed Objections to the Debtor's Plan. The Rodriguez and the Nowakowski Objections each raise the same issue – that of the ability of the Debtor's Board to specially assess the homeowners in order to fund the Plan, in apparent violation of the terms of the Debtor's Declaration of Covenants, Conditions and Restrictions.

The Batt, Grom and Martin Objection raises a number of bankruptcy issues concerning confirmation of the Debtor's Plan under Section 1129 of the Code. Batt, Grom and Martin do not assert that the Debtor's Board is without the authority to specially assess the homeowners.

Rather, as discussed below, Batt, Grom and Martin argue that the Court lacks jurisdiction to decide the special assessment issue.

The Thi Objection asserts that Mr. Thi was duped into purchasing a home in the Manchester Oaks community because the statutorily required Disclosure Packets provided to him did not contain a description of the ongoing litigation between the Association and Messrs. Batt, Grom and Martin, nor the pendency of the Debtor's Chapter 11 case in this Court. For this reason, Mr. Thi seeks to be exempted from paying the special assessment passed by the Board.

The Grom Supplemental Objections raise issues of internal corporate governance of the Debtor, specifically, whether the Debtor should have 3 or 5 Directors, and whether the bankruptcy filing was properly authorized. The Court sustained evidentiary objections at the confirmation hearing to the effect that the authorized number of Directors was not relevant to the Plan confirmation issues and, further, if Mr. Grom wanted to assert that the bankruptcy filing was unauthorized, he should have filed a Motion to Dismiss the case a long time ago.

The Court will first address the Batt, Grom and Martin Objection, that the Plan fails because the Debtor lacks acceptance from an impaired class of claims. This objection, as discussed below, turns on whether the accepting class, Class 5, can be separately classified from the Class 3 and 4 claims. The Court will then address the Rodriguez and Nowakowski Objections, dealing with the special assessment.

## I.      The Plan Does Not Meet the Requirements of Section 1129(a)(10).

Section 1129(a)(10) of the Bankruptcy Code requires that the Debtor's Plan be accepted by at least one impaired class of claims, determined without reference to the votes of any insiders (there is no suggestion here that WTP is an insider of the Debtor). The Debtor has the acceptance of WTP, the only creditor in Class 5. The only other votes received were those of Batt, Grom and

9

Martin, all of whom have rejected the Plan as Class 3 and Class 4 creditors. This raises two

issues for resolution by the Court: (1) whether the WTP claim is an impaired claim; and (2)

whether the Debtor has properly classified the WTP claim separately from the Class 3 and 4

claims. The Court finds that, although the WTP claim is an impaired claim, the separate

classification of this claim constitutes impermissible gerrymandering.

### A.   Is the WTP Claim Impaired?

The WTP claim is classified by itself as a Class 5 claim. Under Section 1124 of the

Bankruptcy Code, a class of claims is impaired, unless the plan:

> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or
>
> (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
> (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365 (b)(2) of this title or of a kind that section 365 (b)(2) expressly does not require to be cured;
> (B) reinstates the maturity of such claim or interest as such maturity existed before such default;
> (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;
> (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365 (b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and
> (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

11 U.S.C. § 1124.

Messrs. Batt, Grom and Martin argue that the WTP claim is not impaired because the

Debtor is paying WTP one hundred percent of what the Debtor and WTP have agreed to, when

they agreed to compromise the claim. Batt, Grom and Martin Objection, p. 5. The WTP claim

was never compromised, though, outside of the Plan confirmation process. The Debtor never

filed a Motion to approve a settlement with WTP pursuant to Bankruptcy Rule 9019. Rather,

WTP objected to the Debtor's Disclosure Statement (Docket No. 446), and as a result, the parties

entered into settlement discussions concerning the claim. At the hearing on approval of the

Debtor's Disclosure Statement, the parties advised the Court that they had settled WTP's claim.

The Court approved the proposed compromise, insofar as it would be included in the Debtor's

Amended Disclosure Statement. At the same time, the Court made clear that the compromise

was subject to confirmation of the Debtor's Plan. Tr., 11/12/2013, p. 14 ("I'm not [ap]proving it

as a compromise today, but it's subject to confirmation of a plan.")  Absent confirmation of the

Plan, neither of the parties to the compromise – the Debtor nor WTP – is bound by the

settlement.

Moreover, the WTP claim, even at the agreed 80%, is not being paid in full on the

Effective Date of the Plan. The Plan provides that it will be paid over 60 months, without

interest. Plan, Sec. 2.05 (Class 5). Thus, the Plan does not "leave unaltered" WTP's rights. Under

State law, WTP would be entitled to the payment of the full amount of its claim on the Effective

Date. The Court finds that the WTP claim is an impaired claim within the meaning of Section

1124.

*B.   Can the WTP Claim be Separately Classified?*

The closer question is whether the WTP claim can be separately classified. If not, then it

belongs in Class 4 with the Batt, Grom and Martin unsecured claims for attorney's fees, and if

that is the case, then the Debtor's Plan fails for lack of an accepting class. 11 U.S.C. §

1129(a)(10).[7]

Section 1122(a) of the Code provides:

Except as provided in subsection (b) of this section [administrative convenience class of claims], a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).

In *Travelers Insurance Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII),*

961 F.2d 496 (4th Cir. 1992), the Fourth Circuit held that, while Section 1122 requires

substantial similarity between claims that are placed in the same class, it does not require that all

substantially similar claims be placed within the same class, and it grants some flexibility in the

classification of unsecured claims. 961 F.2d at 502. Nevertheless, separate classification "may

only be undertaken for reasons independent of the debtor's motivation to secure the vote of an

impaired, assenting class of claims." *Id*. (quoting *In re Greystone III Joint Venture,* 948 F.2d

134, 139 (5th Cir. 1992)).

The Debtor argues that the claim should be separately classified because the Debtor has

agreed to release any legal malpractice claims that it might have against WTP as a part of the

settlement. The release of any legal malpractice claims, according to the Debtor, induced WTP to

compromise its claim. Neither the Debtor's original Disclosure Statement (Docket No. 440), nor

its Amended Disclosure Statement (Docket No. 454), though, even mentions a malpractice claim

against WTP, much less describes the basis for such a claim against the firm. *See* Disclosure

---

[7] The WTP claim does not belong in Class 3, the Batt, Grom and Martin claims for compensatory damages. The Debtor has chosen to pay interest on these claims, which it is not required to do under the Bankruptcy Code. Because the Debtor is not similarly choosing to pay interest on the WTP claim, it more properly belongs in Class 4, the unsecured claims of Batt, Grom and Martin for attorney's fees (which are substantially larger than their claims for compensatory damages).

Statement, Docket No. 440, Sec. 2(A), pp. 6-7; Amended Disclosure Statement, Docket No. 454, Sec. 2(A), pp. 6-7. WTP, for its part, asserts: "The Debtor had never asserted any claims against WT&P, and does not describe any such claims as an asset in its Disclosure Statement. Nevertheless, out of an abundance of caution, WT&P insisted that its acceptance of the Plan be conditioned on this waiver."  WTP Reply Memorandum, Docket No. 461, fn. 1. The Debtor did not present any evidence at the confirmation hearing concerning the nature of a malpractice claim against the firm. The Court finds that the Debtor has failed to satisfy its burden of proof with respect to the justification for separate classification of the WTP claim. Moreover, now that any malpractice claims are to be released (assuming confirmation of the Plan), there is no remaining justification to separately classify the WTP claim. The release of any malpractice claims simply is not sufficient to overcome the gerrymandering objection.

The Court also looks to the treatment of the respective claims under the Plan. Where the claims receive the same treatment, the Debtor's separate classification is, in the words of *Bryson Properties*, "highly suspect." 961 F.2d at 502. *See also In re Save Our Springs (S.O.S.) Alliance, Inc.,* 632 F.3d 168, 174 (5th Cir. 2011) ("S.O.S.'s plan treats all its unsecured creditors identically, so they should all have been in the same class absent a legitimate reason to classify them separately"); *In re Deep River Warehouse, Inc.,* 2005 WL 2319201, at *7 (Bankr. M.D.N.C. 2005) (same treatment of trade creditors and secured creditor's deficiency claim made separate classification highly suspect, and caused the court to conclude that separate classification was improper). The WTP claim is treated in the Plan precisely the same as the Class 4 unsecured claims of Batt, Grom and Martin. *See* Plan  Sec. 2.04 (Class 4 – Batt, Grom and Martin Claim; "This claim will be paid in equal amounts over a 60 month period beginning

30 days after the Effective Date"); and Sec. 2.05 (Class 5 – WTP Claim; "This claim will be paid

in equal amounts over a 60 month period beginning 30 days after the Effective Date").

Finally, WTP argued at the confirmation hearing that the Batt, Grom and Martin claims

were different because they have a judgment against the Debtor, and WTP does not. This,

however, is a meaningless distinction in this case. The Debtor's Plan proposes to treat the Batt,

Grom and Martin claims as unsecured claims, and does not assert that Batt, Grom and Martin's

judgment has attached as a lien to any of the Debtor's property. Both the Class 4 claims and the

Class 5 claim are treated as unsecured creditors under the Plan.

The Debtor has not met its burden in justifying separate classification for the WTP claim.

The Court finds that the Debtor has separately classified the WTP claim solely in an effort to

gain the affirmative vote of an impaired class of claims. The Plan cannot be confirmed because

the Debtor does not have an accepting class of impaired claims.

## II.     The Plan is Not Feasible.

Section 1129(a)(11) of the Bankruptcy Code requires that the confirmation of the Plan

will not likely be followed by the liquidation, or the need for further financial reorganization, of

the Debtor. "The feasibility standard is whether the plan offers a reasonable assurance of

success; success need not be guaranteed." *In re Travelstead,* 227 B.R. 638, 651 (D. Md. 1998)

(quoting *In re Johns–Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)); *See also In re Walker*,

165 B.R. 994, 1004 (E.D. Va. 1994) (the plan must "present a workable scheme of organization

and operation from which there may be a reasonable expectation of success.") The debtor has the

burden of demonstrating that a plan is feasible. *In re Renegade Holdings, Inc.,* 2013 WL

2353940, at *8 (Bankr. M.D.N.C. 2013); *In re Wiggins Farms, Inc.,* 2012 WL 6059208, at *2

14

(Bankr. E.D.N.C. 2012). The Court finds that the Debtor's Plan is not feasible because it rests on the shifting sands of a faulty special assessment, as more fully set out below.

   A.   *Jurisdiction.*

   The Court first must satisfy itself that it has jurisdiction to decide the special assessment issue in the context of plan confirmation. Messrs. Batt, Grom and Martin filed a Limited Response to the Nowakowski and Rodriguez Objections, in which Batt, Grom and Martin argue that the Court lacks subject matter jurisdiction to decide the special assessment issue. Docket No. 458, p. 2. They argue that the special assessment issue is purely one of State law, and rely on *Stern v. Marshall,* __ U.S. __, 131 S.Ct. 2594 (2011), for the proposition that the Court cannot decide this issue.

   Confirmation of the Debtor's Plan is a core proceeding, over which the Court has jurisdiction and for which the Court can enter a final order. *19 East Greenway, LLC v. Bataa/Kierland LLC (In re Bataa/Kierland LLC),* 496 B.R. 183, 188-89 (D. Ariz. 2013) (bankruptcy court had jurisdiction to decide dispute in connection with plan confirmation); *In re Charles Street African Methodist Episcopal Church of Boston,* 499 B.R. 66, 99 (Bankr. D. Mass. 2013) (confirmation of plan involving third party releases within bankruptcy court's jurisdiction); *In re Lower Bucks Hosp.,* 471 B.R. 419, fn. 45 (Bankr. E.D. Pa. 2012), *aff'd* 488 B.R. 303 (E.D. Pa. 2013) ("If a bankruptcy court lacks subject matter jurisdiction over plan confirmation, it is hard to conceive of any matter that would fall within bankruptcy subject matter jurisdiction"); *In re Wash. Mut., Inc.,* 461 B.R. 200, 215 (Bankr. D. Del. 2011) (bankruptcy court has jurisdiction to approve a settlement in connection with plan confirmation, holding: "Confirmation of a plan of reorganization is within the bankruptcy court's core

jurisdiction.") The Debtor is seeking confirmation of its Chapter 11 Plan, historically a core competency of the bankruptcy court.

In *Stern*, the Court held that the judicial power resides with Article III Courts. *Stern*, though, involved the entry of a final, money judgment against a party. This case does not involve the entry of a money judgment, and does not raise the kind of systemic concerns at issue in *Stern*. While the validity of the special assessment may involve issues of purely State law, this is not determinative. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.")  Bankruptcy courts routinely make determinations of core issues that involve questions of State law. The Supreme Court has held that a determination of whether a property interest is property of the estate, a core proceeding under 28 U.S.C. § 157(b)(2)(E), is to be made by reference to State law. *See Butner v. United States,* 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") *See also Lee v. Anasti (In re Lee)*, 461 Fed.Appx. 227, 233 (4th Cir. 2012) (the bankruptcy estate's rights in property are limited to what the debtor owned as of the petition date); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron),* 155 F.3d 718, 721 (4th Cir. 1998) (trustee's rights in property subject to determination of express trust under State law). The Court finds that it has jurisdiction to decide this matter.

B.  *Va. Code Section 55-514(A) Does not Permit the Special Assessment in this Case.*

The Debtor relies on Va. Code § 55-514(A) for the validity of the special assessment. Relying on Va. Code § 55-508, Messrs. Rodriguez and Nowakowski assert that Section 55-514

does not apply in this case, and that the special assessment was not authorized under Section 4.4

of the Declaration.

Section 4.4 of the Declaration provides as follows:

In addition to the annual assessments authorized above, the Association may levy in any calendar year a special assessment applicable to that year only for the purpose of defraying, in whole or in part, the cost of any construction, reconstruction, repair, or replacement of a capital improvement on the Common Area, including the fixtures and personal property related thereto, or for any other specified purpose, provided that any such assessment (except for those authorized by section 7.4.2 of this Declaration) shall be approved by a vote of at least two-thirds (2/3) of each class of Members who are present at a meeting duly called for such purpose, written notice of which (setting forth the purpose of the meeting) shall be sent to all Members not less than 15, nor more than 50, days in advance of the meeting.

Section 55-514(A), on the other hand, provides as follows:

In addition to all other assessments which are authorized in the declaration, the board of directors shall have the power to levy a special assessment against its members if the purpose in so doing is found by the board to be in the best interests of the association and the proceeds of the assessment are used primarily for the maintenance and upkeep of the common area and such other areas of association responsibility expressly provided for in the declaration, including capital expenditures. A majority of votes cast, in person or by proxy, at a meeting of the membership convened in accordance with the provisions of the association's bylaws within 60 days of promulgation of the notice of the assessment shall rescind or reduce the special assessment. No director or officer of the association shall be liable for failure to perform his fiduciary duty if a special assessment for the funds necessary for the director or officer to perform his fiduciary duty is rescinded by the owners pursuant to this section, and the association shall indemnify such director or officer against any damage resulting from any claimed breach of fiduciary duty arising therefrom.

Va. Code § 55-514(A).

The tensions between the two provisions are obvious. The Declaration requires the

affirmative vote of two-thirds of the Members who are present at a meeting after notice of such

meeting has been sent to all of the Members. Section 55-514(A) requires only a majority of votes

cast, in person or by proxy, at a meeting of the membership. Section 4.4 of the Declaration

requires that notice be sent to all Members not less than 15, nor more than 50, days before the

meeting. Section 55-514(A) allows the Board to pass the special assessment, subject to being

overturned by the homeowners at a meeting called to rescind or reduce the special assessment,

within 60 days of the promulgation of the notice of assessment.

In this case, it is undisputed that the Board did not comply with Section 4.4 of the

Declaration. Notice was not sent, and the special assessment was not approved by the required

two-thirds majority. On the other hand, it is not disputed that no meeting was called by the

homeowners in response to the special assessment pursuant to the terms of Section 55-514(A) in

order to rescind or reduce the special assessment.[8]

Assuming, without deciding, that § 55-514(A) provides a grant of supplemental authority

to the Board to make special assessments under these circumstances (i.e., where the Declaration

says otherwise), the Court finds that the special assessment in this case does not comport with

the limitations contained in Section 55-514(A). Section 55-514(A) grants the Board the authority

to levy a special assessment, "if the purpose in doing so is found by the board to be in the best

interests of the association and the proceeds are used primarily for the maintenance and upkeep

of the common area *and such other areas of association responsibility expressly provided for in

the declaration,* including capital expenditures." (Emphasis added). It cannot seriously be

disputed that the Debtor's Board has determined that this special assessment is in the best

interests of the Association. The proceeds of the special assessment, on the other hand, are not

being used for the maintenance and upkeep of the common areas (including any capital

expenditures).

---

[8]  The Association's Bylaws provide that special meetings of the members may be called at any time by the
president or the Board, or upon written request of one fourth (1/4) of the members. Bylaws, Art. III, Sec. 2. One-
tenth of the members in each class constitutes a quorum. *Id.,* Sec. 4.

The question then becomes: is the special assessment to be used for "such areas of association responsibility expressly provided for in the declaration?" The Court finds that it is not. To determine what areas of responsibility are expressly provided for in the Declaration, we look to Section 2.3 ("Powers and Duties") of the Declaration. Not surprisingly, considering that the Declaration was written in 1989, years before all the acrimony over the parking spaces arose among the homeowners, there is nothing in Section 2.3 of the Declaration that expressly provides for the payment of judgments such as the Batt, Grom and Martin Judgment, nor is there anything in Section 2.3 concerning the payment of the administrative expenses of a bankruptcy filed by the Association. Section 2.3.1 provides for the payment of costs and expenses for the enforcement of the Declaration in "proceedings initiated by the Association," but it does not provide for the payment of legal fees and expenses of the Association's opponents, should the Association be sued by the homeowners, as has occurred here. The Court notes here that Batt, Grom and Martin were awarded attorney's fees and costs as the prevailing parties pursuant to Va. Code § 55-515(A), not pursuant to any express grant in the Declaration. *Manchester Oaks Homeowners Ass'n, Inc. v. Batt*, 248 Va. 409, 427; 732 S.E.2d 690, 701. Section 2.3.9 provides the Association with the power to employ counsel "to defend suits brought against the Association," but it does not reference the payment of the Plaintiffs' legal fees and expenses. Section 2.3.19 grants authority to exercise such other or additional rights "as are conferred upon the Association pursuant to the terms of" the Declaration, which is a general grant of authority.

There can be no doubt that the Association has the general corporate authority, and the legal obligation, to pay any judgments levied against it. But Section 55-514(A) limits the Board's authority to make special assessments for matters of association responsibility "*expressly provided for in the declaration,*" not impliedly drawn from the terms of the Declaration. Section

19

55-514(A) simply does not provide as sweeping a grant of power to the Board as the Debtor suggests, in derogation of the terms of the Debtor's own Declaration. If the Court were to accept the Debtor's view of the breadth of Section 55-514, then Section 4.4 of the Declaration would have very little, if any, meaning.

The Court rejects the Debtor's argument that Section 4.4 simply does not apply (and hence, we should look to Va. Code § 55-514(A)) because Section 4.4 is restricted to special assessments made "in any calendar year," "applicable to that year only." Where Section 4.4 provides that the Association "may levy in any calendar year a special assessment applicable to that year only," the "may" means that the Association "may *only*." The "applicable to that year only" language can't be viewed as a license to make an end-run around the Declaration for multiple-year special assessments. The Court views the term "may" in Section 4.4 as being a limitation on the Board's authority, not a general grant of authority to approve special assessments for periods longer than the stated one year. *See TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C.,* 263 Va. 116, 121, 557 S.E.2d 199, 201 (2002) (quoting *Pettus v. Hendricks*, 113 Va. 326, 330, 74 S.E. 191, 193 (1912)) ("while the word 'shall' is primarily mandatory in effect, and 'may' is primarily permissive in effect, 'courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe "may" and "shall" as permissive or mandatory in accordance with the subject matter and context'"); *Supervisors of Botetourt County v. Cahoon*, 121 Va. 768, 94 S.E. 340, 344 (1917) (construing the term "may" as limiting, where the statute "authorizes and empowers" the power to act). In other words, the term "may" in Section 4.4 must be read to mean "may *only* approve a special assessment in accordance with Section 4.4," not to mean "may also approve special assessments for more than one year, without compliance with the terms of this Declaration." In any event, if

20

Section 4.4 does not authorize this assessment, as suggested by the Debtor, this does not mean that the assessment is authorized by Section 55-514.

Finally, the Debtor argues that the homeowners have ratified the special assessment because, according to Ms. Rang's testimony, more than 50% of the homeowners are now paying the special assessment – the inference being that those opposed to the special assessment could not garner the required 60% to overturn the special assessment, at this point. But, as the Court has found, Section 55-514 cannot be used to authorize the special assessment in this case; the 60% provision contained therein therefore cannot be relied upon by the Debtor for the validity of the special assessment. Further, the fact that more than 50% of the homeowners are paying the special assessment does not mean that they are happy about it, and that they would not vote against the special assessment were they provided the opportunity to do so tomorrow. Ms. Rang testified that those homeowners who are not paying the special assessment could be subject to collection actions by the Association and its attorneys. Ratification requires one to "act[ ] in such a manner as to unmistakably indicate that he intend[ed] to avail himself of the benefits" of the action taken. *Smith v. Mountjoy,* 280 Va. 46, 56, 694 S.E.2d 598, 604 (2010); *Piedmont Mt. Airy Guano Co. v. Buchanan*, 146 Va. 617, 625, 131 S.E. 793, 795 (1926). The Court is unwilling to infer a ratification of the special assessment by the homeowners where they are paying the special assessment under the threat of legal action.

There is no dispute that the Debtor has not complied with the requirements of Section 4.4 of the Declaration; the Debtor admits as much. The Court finds that Va. Code § 55-514 does not authorize the special assessment in this case. The special assessment is invalid, and the Plan cannot be confirmed.

### III.      The Plan is Not Proposed in Good Faith and Not by any Means Forbidden by Law.

Section 1129(a)(3) of the Bankruptcy Code requires that the plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). A number of courts emphasize the "proposed" language of Section 1129(a)(3), and hold that Section 1129(a)(3) focuses on the process by which a plan has been put forth, not on the substance of the plan itself. *In re Irving Tanning Co.,* 496 B.R. 644, 660 (1st Cir. B.A.P. 2013); *In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 59-60 (Bankr. S.D.N.Y. 1990). Other courts, particularly those in the Fourth Circuit, take a more substantive view, when determining whether the plan meets the "proposed in good faith and not by any means forbidden by law" test of Section 1129(a)(3). *See In re Walker,* 165 B.R. 994, 1001 (E.D. Va. 1994) ("whether a plan is filed in good faith is a matter to be assessed in view of the totality of the circumstances which necessitated the plan, in perspective of the purposes of the Bankruptcy Code"); *In re Osborne,* 2013 WL 2385136 (Bankr. E.D.N.C. 2013) (viewing debtor's lifestyle and expenses as a part of the good faith inquiry); *In re Harenberg,* 491 B.R. 706, fn. 27 (Bankr. D. Md. 2013) ("An inquiry into good faith is a factual one geared to a consideration of the totality of the circumstances"); *In re Gyro-Trac (USA), Inc.,* 441 B.R. 470, 479 (Bankr. D.S.C. 2010) (same).

The Court views this focus on the process by which a plan is proposed as being unduly restrictive. If we were to focus solely on process, we are essentially asked to interpret Section 1129(a)(3) to be duplicative of the disclosure statement approval process contained in Section 1125 of the Code, which itself is set out as a separate requirement for confirmation of a plan in Section 1129(a)(2) of the Code (requiring that the plan proponent comply with the applicable provisions of Title 11). The Court should avoid construing differing parts of a statute to be duplicative, where possible. *Bullock v. BankChampaign*, N.A. __ U.S. __, 133 S.Ct. 1754, 1760

22

(2013) (citing *Babbitt v. Sweet Home Chapter, Communities for Great Ore*., 515 U.S. 687, 698

(1995)) (noting "a reluctance to treat statutory terms as surplusage").[9]

For the reasons stated in Part II above, the Court finds that the Plan violates applicable

law. The Plan simply cannot be confirmed where it is so dramatically in conflict with the

Declaration.[10] The Court hastens to say that it does not find any subjective bad faith on the part

of the Debtor. The Debtor's President, Ms. Rang, testified quite convincingly that the Board

viewed this Plan, and the special assessment, as the only way out of the intractable, expensive

and interminable litigation with Messrs. Batt, Grom and Martin, and as the only means of exit

from this bankruptcy case. As Debtor's counsel suggests, the special assessment may well be a

reasonable means of exit from this case. However, the Court is not free to ignore applicable law

in the name of expediency. As Justice White said in *Protective Committee for Independent

Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 449 (1968): "One can easily

sympathize with the desire of a court to terminate bankruptcy reorganization proceedings, for

---

[9]  The "not by any means forbidden by law" portion of Section 1129(a)(3) also has to be read in conjunction with Section 1123(a)(5)'s requirement that "notwithstanding any otherwise applicable nonbankruptcy law," the plan shall provide adequate means for its implementation. The "notwithstanding" clause in Section 1123(a)(5) is a preemption of applicable nonbankruptcy law. However, this preemption is not without limits. In *In re Irving Tanning Co.,* 496 B.R. 644, 660 (1st Cir. B.A.P. 2013), the court recognized three limitations on the preemptive effect of Section 1123(a)(5). First, the statute preempts applicable nonbankruptcy law only to the extent necessary for implementation of the plan. Second, the statute does not preempt laws protecting public health, safety and welfare. Third, the statute "cannot extend to laws defining and protecting the property rights of third parties." 496 B.R. at 664. Here, the Court cannot find preemption of the terms of the Declaration in order to require the homeowners to pay the special assessment any more than the Court could compel a financial institution to provide exit financing for a Chapter 11 debtor or compel the shareholders of an insolvent debtor to advance new value in order to save the enterprise (absent a subscription agreement requiring them to do so, but even then, the Court likely would be limited to entering a judgment for the subscription amount, not specific performance of the agreement). To compel the homeowners to pay the special assessment in this case in reliance on Section 1123(a)(5), would in the words of the *Irving Tanning* court, "run headlong into constraints and quite possibly outright impediments in the takings clause of the Fifth Amendment." *Id.* at 665.

[10]  The Court recognizes that the Declaration is essentially a private contract between the Association and the homeowners, but the Declaration has the force of applicable law. *See* Va. Code §§ 55-515(A) ("Every lot owner, and all those entitled to occupy a lot shall comply with all lawful provisions of this chapter and all provisions of the declaration") and 55-516 (Lien for Assessments); *Shelley v. Kraemer,* 334 U.S. 1, 22-23 (1948) (enforcement of discriminatory restrictive covenants in State courts constitutes state action and violates the Equal Protection Clause).

they are frequently protracted. The need for expedition, however, is not a justification for abandoning proper standards."

The Court finds that the Plan is not proposed in good faith, and is in direct violation of the Declaration. The Plan, therefore, cannot be confirmed.

### Conclusion

For the foregoing reasons, the Court will deny confirmation of the Debtor's Plan. A separate Order shall issue.[11]

Date: Mar 12 2014

Alexandria, Virginia

/s/ Brian F. Kenney

Brian F. Kenney
United States Bankruptcy Judge

Entered on Docket: March 12, 2014

---

[11] The Court's ruling makes Mr. Thi's request for an exemption from the special assessment moot.

Copies to:

Thomas J. Stanton, Esquire
Stanton & Associates, P.C.
221 South Fayette Street
Alexandria, VA 22314
Counsel for the Debtor

Justin Fasano, Esquire
Whiteford Taylor & Preston, L.L.P.
3190 Fairview Park Drive, Suite 300
Falls Church, VA 22042

Joseph A. Guzinski, Esquire
Office of the U.S. Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314

Rudolph J. Grom
6804 Signature Circle
Alexandria, VA 22310

Gregory Nowakowski
Signature Circle
Alexandria, VA 22310

Hector Daniel Rodriguiz
Signature Circle
Alexandria, VA 22310

David Ludwig, Esquire
Dunlap, Grubb & Weaver, PLLC
199 Liberty Street, S.W.
Leesburg, VA 20175

Huynh Huh Thi
6831 Signature Circle
Alexandria, VA 22310